L. Miles LeBaron (#8982)
LeBaron & Jensen, P.C.
476 West Heritage Park Blvd., Suite 230
Layton, Utah 84041
Telephone: (801) 773-9488
Facsimile: (801) 773-9489

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOEL WEAVER,<br><br>    Plaintiff,<br><br>vs.<br><br>UTILITY TRAILER MANUFACTER-<br>ING CO.,<br><br>    Defendant. | COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>Case No.  1:12-cv-00172-CW<br><br>Honorable  Clark Waddoups |

COMES NOW the Plaintiff, Joel Weaver (hereinafter "Plaintiff"), by and through counsel, and complains against Defendant as follows:

JURISDICTION, VENUE, AND PARTIES

1. Plaintiff Joel B. Weaver is an individual residing in Layton, Davis County, Utah.

2. Upon information and belief, Defendant Utility Trailer Manufacturing Company (hereinafter "Utility Trailer" or "Defendant") is a corporation with its principal place of business in California but with a manufacturing plant in Clearfield, Utah.

3. The events complained of took place in Clearfield, Davis County, Utah.

4. This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. §1331 as this action arises under the laws of the United States.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) as Defendant resides in and is subject to the court's personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

6. In January, 2011, Plaintiff applied to work at Defendant's plant in Clearfield, Utah as an installer of evaporation and refrigeration units for utility trailers.

7. Plaintiff has degenerative disc disease, a condition where intervertebral discs of the spine begin to shrink and degenerative. Plaintiff suffers severe, chronic pain in his wrist, elbows, and shoulders; frequently experiences numbness in his legs; and can have difficulty lifting items. Plaintiff treats his pain with medications prescribed by his doctor. His condition is hereditary and progressive.

8. At the time of his hiring, Plaintiff disclosed to Defendant's Human Resource managers Brian Shephard and Joe Maylin that he had degenerative disc disease in his upper neck and back; that his symptoms were being treated by pain medication; and that he was still able to perform any work pertaining to his job.

9. In response, Brian Shephard and Joe Maylin informed Plaintiff that as long as he was able to pass the company drug tests he would be hired without problems.

10. Plaintiff passed a pre-employment drug test on or about January 24, 2011, and began work on or about February 7, 2011.

11. Despite frequent and severe pain, Plaintiff was still one of the fastest and most efficient

2

workers in the plant.

12. Beginning at or soon after the time of Plaintiff's hiring and continuing throughout Plaintiff's employment at Defendant's plant, assistant manager Darren Brown made derogatory comments regarding Plaintiff, calling Plaintiff a "hypochondriac liar," referring to him as a "druggie" because of Plaintiff's use of prescription medication, alleging that Plaintiff was faking his back problem, and stating that Plaintiff was not worthy of working at the plant and should not be employed to work there.

13. Plaintiff reported Brown's harassment informally to Steve Valentine, one of his supervisors, and then to Joe Maylin, the Human Resources manager. Joe Maylin dismissed Plaintiff's complaints, stating "I don't believe you" and "I think you're a druggie because the person who said it has been here for over 20 years and I trust him over anyone else."

14. In September 2011 Plaintiff's pain worsened, and an MRI revealed moderate to severe degenerative damage in his neck. Plaintiff's doctor advised him to be more careful with his physical activity.

15. Plaintiff disclosed his doctor's diagnosis and advice to his supervisors, Steve Valentine and Robbie Jones, as well as to his direct co-workers. Plaintiff informed them that he might need to slow down the pace of his work at times and might also need more help lifting and pushing objects so that he did not exacerbate his condition. Steve Valentine and Robbie Jones informed plaintiff that there would be no problem and that he was a valuable employee who did a great job, given his condition.

16. Throughout the course of his employment with Defendant, Plaintiff took monthly scheduled and random drug tests administered at Skyline Pain Clinic, which yielded positive results at appropriate levels for the medications his doctor had prescribed and negative re-

3

sults for any illegal drugs. Plaintiff also produced his medication for monthly scheduled and random counts at Skyline Pain Clinic to determine whether he was using the appropriate number of pills. If inappropriate levels of medication had been detected in Plaintiff's tests, or if the number of pills had been found to be off, Plaintiff's prescriptions would not have been renewed.

17. On or about October 28, 2011, Plaintiff passed a random drug test administered on behalf of Defendant at Work Care Clinic.

18. Darren Brown's harassment of Plaintiff continued throughout the course of Plaintiff's employment at Defendant's plant. The most recent harassment occurred on or about November 15, 2011.

19. As well as harassing Plaintiff to his face and behind his back, Darren Brown also spread rumors that Plaintiff was dealing drugs to others in the plant.

20. On or about December 7, 2011, Plaintiff was suspended for one week without pay by Joe Maylin, the human resources manager, who accused Plaintiff of abusing his medication and of "giving and receiving" drugs. Joe Maylin asserted that an investigation would be conducted, but no drug test was administered, and Plantiff was never informed of any findings resulting from the investigation.

21. On or about December 14, 2011, Plaintiff was fired on the pretext that he had violated company drug policy. Plaintiff had used no drugs other than those authorized by his physician and disclosed to and approved by Defendant's officers at his hiring.

22. Before his termination, Plaintiff had an excellent work record and was paid at the rate of $15.15 an hour. Between February 7, 2011 and November 27, 2011, Plaintiff worked an average of 47.6 hours weekly and received at least 4 raises, from $11.50 to $15.15 an hour.

23. If Plaintiff had not been terminated, he would have been able to work for approximately seven (7) more years before his disease progressed to the point of totally disabling him.

## FIRST CAUSE OF ACTION
## (DISCRIMINATION)

24. Plaintiff re-alleges and reincorporates the allegations in paragraphs 1 through 23 above as if fully set forth herein.

25. Defendant has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and is therefore a covered employer under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111(5)(a).

26. Plaintiff's degenerative disc disease is a disability as defined by 42 U.S.C. §12102.

27. Plaintiff was able to perform the essential functions of his employment position with reasonable accommodation for his pain and delayed speed and was therefore a qualified individual as defined by 42 U.S.C. §12111(8).

28. Plaintiff was harassed by Defendant's employees and ultimately terminated by Defendant's managers on the basis of his disability in violation of 42 U.S.C. §12112.

29. As a result of Defendant's unlawful, malicious, and reckless actions Plaintiff has suffered injury and damages in the amount of at least $32,000.00 in back-pay.

30. Plaintiff is therefore entitled to damages in an amount to be proven at trial, in the amount of at least $32,000.00, plus court costs and attorneys fees.

31. Plaintiff is also entitled to front pay in lieu of reinstatement, in an amount to be proven at trial, but at least in the amount of $336,000.00.

32. Additionally, Plaintiff respectfully asks this Court to award punitive damages against Defendant in the amount of at least $200,000.00.

## SECOND CAUSE OF ACTION
## (WRONGFUL TERMINATION)

33. Plaintiff re-alleges and reincorporates the allegations in paragraphs 1 through 30 as if fully set forth herein.

34. Plaintiff was fired by Defendant's managers after complaining of discrimination on the basis of his disability.

35. Defendant's termination of Plaintiff was in violation of public policy.

36. Defendant's pretext that Plaintiff had violated company drug policy is unworthy of credence, and Defendant did not act for the alleged nondiscriminatory reason.

37. Plaintiff is entitled to damages in an amount to be proven at trial, in the amount of at least $32,000.00, plus court costs and attorneys fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

38. For a money judgment in favor of Plaintiff for general and punitive damages in an amount to be proven at trial, but at least in the amount of $232,000.00.

39. For injunctive relief in the form of front pay in lieu of reinstatement, in an amount to be determined at trial, but at least in the amount of $336,000.00.

40. For an award of costs and reasonable attorneys' fees.

41. That this Court award any other further relief that it deems just and appropriate.

**DATED and SIGNED this 17 day of August 2012.**

LEBARON & JENSEN, P.C.

L. Miles LeBaron
**Attorney for Plaintiff**

## CERTIFICATE OF MAILING

I hereby certify that on this \_17\_ day of August 2012, a true and correct copy of the foregoing was mailed by U.S. First Class mail to the following:

Utility Trailer Manufacturing Co.
Attn: Paul G. McNamara
17295 E. Railroad St.
City of Industry, CA 91748

_/s/ K. Baxter_